UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: DELTA TOWING LLC                                    CIVIL ACTION

                                                          No. 07-3910
                                                          c/w 07-9100
                                                          REF: All Cases

                                                          SECTION I/1

ORDER AND REASONS

Before the Court is a motion for summary judgment, filed on behalf of third-party

defendant, Fugro Chance, Inc. ("Fugro").[1]  Delta Towing LLC ("Delta") and Horizon Vessels,

Inc., Horizon Offshore Contractors, Inc. and Horizon Offshore, Inc. (collectively, "Horizon")

have filed opposition memoranda.[2]  For the following reasons, Fugro's motion is **DENIED**.

BACKGROUND

The factual allegations in this case are familiar to the parties and the Court from prior

orders as well as the pretrial conference held on October 16, 2008.

On May 1, 2008, Delta filed a third-party complaint against Fugro, alleging that Delta is

entitled to contribution, contractual indemnity, or tort indemnity from Fugro.[3]  Other than

Delta's third-party claim, no other party has asserted any claim against Fugro.  Further, Delta has

---

[1] R. Doc. No. 111.

[2] R. Doc. Nos. 128, 131.

[3] R. Doc. No. 51, third-party compl. ¶¶ 21-22.

1

not demanded judgment against Fugro and in favor of BP, SNG, or Apache, as is its right

pursuant to Federal Rule of Civil Procedure 14(c).[4]  The Court construes Delta's third-party

complaint as a Rule 14(a) impleader claim for indemnity or contribution to Delta.  See Tx. A&M

Research Found. v. Magna Transp, Inc., 338 F.3d 394, 400 (5th Cir. 2003) (declining to construe

third-party complaint as seeking to impose direct liability to plaintiffs upon third-party

defendant).

### *LAW AND ANALYSIS*

## I.      Contribution and Indemnity

As an initial matter, the Court must determine what theories of liability are available to

Delta under the circumstances of this case.  Delta asserts an entitlement to "contribution and/or

contractual and/or tortious indemnity" from Fugro.[5]  The Court addresses indemnity theories,

followed by its contribution claim.

### A.      Indemnity

With respect to indemnity, in the status teleconference held November 4, 2008, Delta

stated that it will no longer pursue claims under either a contractual indemnity or tort indemnity

theory.  Therefore, the indemnity claims asserted by Delta in its third-party complaint are

**DISMISSED WITH PREJUDICE**.

### B.      Contribution

---

[4] Third-party compl. ¶ 23 ("Delta Towing, LLC prays . . . [that] there be judgment herein in favor of Delta Towing against Fugro Chance Inc., finding that Delta Towing is entitled to contribution and/or contractual and/or tortious indemnity from Fugro Chance Inc. for any sums which it has or may be required to pay herein . . . .").

[5] Id.

Delta's remaining allegation is that Fugro is liable to Delta for contribution.  If Delta is found liable to plaintiffs in the main action, then it can seek contribution from Fugro to the extent any portion of Delta's liability is attributable to Fugro.  See Tx. A&M Research Found., 338 F.3d at 400.  "[A] third-party complaint is not proper under Rule 14 if the defendant cannot show a basis for the third-party defendant's liability to the defendant."  McCain v. Clearview Dodge Sales, Inc., 574 F.2d 848, 849-50 (5th Cir. 1978).

The Court repeats that Fugro has not been tendered by Delta to the plaintiffs pursuant to Rule 14(c).  The question, therefore, is not whether Fugro was a proximate cause of the incident that allegedly injured BP, SNG, and Apache.  Instead, the question is whether Fugro owed any legal duty to Delta and, if so, whether it breached that duty and is, therefore, responsible for any portion of Delta's fault.

## II.     Summary Judgment Standard

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

3

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue.  Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor."  Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

Fugro's makes two basic arguments in support of summary judgment.  First, Fugro contends that there is no evidence that it breached any contractual duty it owed to Horizon. Second, Fugro argues that, as a matter of law, it did not breach any extra-contractual duty it might have had to other parties in this litigation.  The Court addresses these arguments in turn.

III.    **Contractual Duty to Horizon**

Delta's and Horizon's first argument is that Fugro had a duty, pursuant to its agreement with Horizon, to identify subsea obstructions, make the Horizon anchor foreman aware of those

4

obstructions, and provide positioning advice to the vessels.[6]  Delta cites language in the "Description of Work" stating that Fugro "performs surveying services on land and offshore consisting of, when requested: . . . position anchor handling vessels."[7]  The Description of Work also contains an express disavowal by Fugro of responsibility for "actual positioning or maneuvering of any vessels . . . except those provided by [Fugro]."[8]

The extent and nature of Fugro's contractual duty to Horizon is irrelevant to the question of whether Fugro owes a duty to Delta.  Delta does not argue that it is a third-party beneficiary of the Fugro/Horizon contract.  Assuming, arguendo, that Fugro did breach its contractual duties to Horizon, that breach would not serve as a basis for Fugro to relieve Delta of some its liability to the plaintiffs.  If Horizon had filed a Rule 14(a) third-party complaint against Fugro and Fugro had breached the contract, then Horizon might be able to attribute some of its liability to Fugro.  However, as explained above, Horizon has not sued Fugro; only Delta has sued Fugro and Delta has cited no contract it has with Fugro.  The Court concludes, as a matter of law, that evidence related to Fugro's alleged breach of its contract with Horizon is irrelevant to and cannot support Delta's third-party claim against Fugro.

---

[6] R. Doc. No. 128, Delta's mem. opp'n 17.

[7] Master service agreement, ex. B  (emphasis added).  The Court notes that "Fugro Chance Inc." is not designated as the subcontractor by the agreement.  Instead, the subcontractor is designated as "John E. Chance & Associates, Inc."  No party has raised the issue of whether John E. Chance & Associates, Inc., Fugro Chance Inc., and Fugro GeoServices, Inc. had differing obligations under the agreement.  The Court, therefore, treats those entities as one and the same for purposes of this motion.
It is important to note that the cited language in the Description of Work merely describes work that Fugro is capable of doing, subject to request by the other contracting party.  However, no party alleges that Fugro was not requested to "position anchor handling vessels."

[8] Id.

IV.     **Extra-Contractual Duty to Other Parties**

The Court must now determine whether Fugro owed any extra-contractual duty to Delta and, if so, whether Fugro breached that duty.  Delta asserts that Fugro, in addition to its contractual duties, "had a general duty to exercise reasonable care."[9]  Delta does not elaborate whether the scope of this duty is sufficiently broad to include Delta (or other parties to this job) within its ambit.  Delta argues that, while Fugro's contract with Horizon does not contemplate Fugro personnel participating in the literal steering of vessels, it does contemplate Fugro's advising the parties with respect to vessel positions.[10]  The Court concludes that, whether as a matter of custom or contractual obligation, Fugro did assume certain duties to the parties during this pipe laying job.

Craig L. Bergeron ("Bergeron"), a Horizon barge superintendent, stated in his deposition that prior to a job, Fugro surveyors "plot the positions where the anchors are going to be set" and, during the job, "check out the area to make sure it's clear to drop an anchor there."[11]  Ken P. Bergeron, Jr., a Horizon barge foreman, testified that the "surveyor would tell [the anchor foreman] if there's any obstructions in the area."[12]  Finally, Ken P. Bergeron, Sr., a Horizon barge foreman, described the role of Fugro as follows:

> Their role would be if they see something, is to tell the anchor
> foreman or the tower operators to alert the anchor foreman if he's

---

[9] Delta's mem. opp'n 20.

[10] Id. at 18.

[11] R. Doc. No. 128, Craig L. Bergeron dep. 199-200.

[12] R. Doc. No. 128, Ken P. Bergeron, Jr. dep. 27.

> not in there, or tell the anchor foreman so he can make corrections. . . . If the anchor foreman's not in there and you're at the fair lead running anchor, with the tug, and Fugro sees something that's not right, he's supposed to let the tower operators know to inform the anchor — his job is to watch that screen and make sure there ain't a mess-up.[13]

Andreau W. Belcher ("Belcher"), the Fugro surveyor allegedly aboard the PECOS HORIZON at the time of the 10:03 a.m. move, gave testimony consistent with this view of Fugro's customary or contractual duties.  Prior to the move, he "informed [the anchor foreman] that . . . we were closing that distance with the cable . . . it's time to start coming up with another position for it for the P-2 anchor."[14]  Belcher further testified that "It's not my place to tell an anchor foreman how to do his job, but I said, you know, don't forget there is a subsea valve here . . . .  We have no knowledge of whether that valve is."[15]

Fugro argues that Belcher discharged its duties by informing Robert Jenkins, III ("Jenkins"), Horizon's anchor foreman during the move, of the proximity of the assembly valve in a face-to-face conversation.  Belcher claims that he advised Jenkins to adopt an alternate approach, and that Jenkins concurred.  Belcher testified that "[Jenkins] made it very clear to me at that time that . . . was a good idea. [Jenkins] thought it, for safety's sake it's a good route. Let's use it."[16]  Belcher also testified that there were "two other individuals there that I do

---

[13] R. Doc. No. 128, Ken P. Bergeron, Sr. dep. 163-64.

[14] R. Doc. No. 128, Andreau W. Belcher dep. 40.

[15] Id.

[16] Id. at 49.

believe did hear the conversation," one of whom was Benjamin Van Chaney ("Chaney").[17]  He further testified that, after the incident, Chaney, a Horizon tower operator, approached him and "told [Belcher] that he wasn't going to lie for anybody. . . . [Chaney] did hear [Belcher] inform [Jenkins] of the valve."[18]

However, Chaney denied overhearing the conversation.[19]  He further denied Belcher's testimony about a subsequent, post-incident conversation concerning Belcher's alleged discussion with Jenkins.  This contradiction in the testimony presents  a credibility question that can only be resolved at trial.  Delta has, therefore, identified a genuine issue of material fact with respect to whether Fugro carried out its duties during the pipe laying operation.  The Court cannot conclude, on the present record, that Fugro fulfilled all of its duties and played no role in causing the incident.[20]

The Court notes that, even if it concludes at trial that Fugro breached its contract with Horizon or failed to act reasonably, that finding would not necessarily mean that Fugro is liable to Delta.  The ultimate question is not whether Fugro breached its contract with Horizon.  After all, Horizon has not sued Fugro — for breach of contract, contribution, indemnity, or

---

[17] Id. at 64.

[18] Id. at 159.

[19] R. Doc. No. 142-4, Benjamin Van Chaney dep. 58-60 ("I didn't hear that conversation.").

[20] Delta also attempts to establish that the information displayed on Fugro's monitors on the tow differed from the information displayed on the barge.  However, Captain Phillip C. Lee of the DELTA FREEDOM testified that the screen shots displayed on the tow and on the barge were "[v]ery similar."  R. Doc. No. 128, Phillip C. Lee dep. 112.  Moreover, Captain Lee's testimony cited by Delta concerns only how the valve assembly was depicted on the screen, rather than any differences in that depiction from one vessel to the other.  Id. at 74-77.  The testimony of Captain David Randle, who took over as captain of the DELTA FREEDOM from Captain Lee, similarly fails to establish that the survey information provided by Fugro varied from one vessel to the other.  David J. Randle dep. 163-64.

8

otherwise.[21]  Instead, the question is whether Fugro was the proximate cause of any of Delta's conduct that gives rise, in the first instance, to Delta's liability, if any, to the plaintiffs in the main action.

**V.      Conclusion**

Accordingly,

Delta's indemnity claims against Fugro are **DISMISSED WITH PREJUDICE**.  In all other respects, Fugro's motion for summary judgment is **DENIED**.

New Orleans, Louisiana, November 5, 2008.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[21] At the pretrial conference held on October 16, 2008, no party, including Horizon, accepted the Court's invitation to amend their complaint to add Fugro as a defendant.